**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| MERCURY INSURANCE COMPANY | : | |
| OF GEORGIA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:13-CV-179 (WLS) |
| | : | |
| EDWARD JONES, JO ANNE JONES, | : | |
| and PAMELA HOVELAND, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>ORDER</u>

Presently pending is Plaintiff Mercury Insurance Company of Georgia's Motion for Discharge and to Recover Attorney's Fees and Costs. (Doc. 17.) On November 14, 2013, Plaintiff Mercury Insurance Company of Georgia filed the above-captioned interpleader action pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22, seeking a determination of which defendant is entitled to insurance proceeds for a dwelling located at 225 Virginia Circle, Cairo, Georgia 39828 (hereinafter known as the "Property"). (Doc. 1.) According to the interpleader complaint, Mercury issued a homeowners insurance policy to Defendants Edward and Jo Anne Jones for the Property. (*Id.* ¶ 7.) Defendant Pamela Hoveland is the holder of a mortgage on the Property and is listed as the mortgagee under the Mercury Policy. (*Id.* ¶ 8.) On October 18, 2012, a fire damaged the Property. (*Id.* ¶ 9.) Additionally, certain personal property of the Jones defendants was destroyed in the fire. (*Id.*)

Defendant Edward Jones filed a claim with Mercury for the losses sustained in the fire. (*Id.* ¶ 10.) After the fire loss, Defendant Hoveland foreclosed on the Property and, subsequently, acquired titled to the insured property at a foreclosure sale. (*Id.* ¶ 11.) Mercury issued a settlement check for the fire in the amount of $102,141.79 payable

to both Defendant Hoveland and Defendant Edward Jones. (*Id.* ¶ 12.) The check was returned because each of the defendants claims to be the only person entitled to receive payment of the insurance proceeds. (*Id.* ¶ 13.) Mercury, as the mere stakeholder, filed this action because it cannot determine which of the defendants is entitled to payment of the insurance proceeds. (*Id.* ¶ 16.)

By Order dated February 7, 2014, the Court granted Mercury leave to deposit the $102,141.79 insurance proceeds with the Court. (Doc. 16.) With the funds now deposited, Mercury moves the Court to award it its attorney's fees and costs incurred in connection with filing the complaint for interpleader in the amount of $5,873.85 to be paid out of the interplead funds. (Doc. 17.)

Citing generally to a legal encyclopedia, Defendant Hoveland states that Mercury's request should be denied because "[s]ome courts refuse to award costs or attorney's fees to stakeholder insurance companies because costs and attorney's fees are viewed as a cost of doing business." (Doc. 18-1 at 2.) Defendant Hoveland made no attempt, however, to point to any case law from any court in this Circuit to support her objection to Mercury's request. (*See generally id.*) Defendant Hoveland also notes that the fees requested by Mercury are substantial in that they exceed five percent of the amount paid into the Court. (*Id.* at 3.) Per Defendant Hoveland, many of the charges, specifically the hours spent performing the preparation and filing of the interpleader action, are excessive. (*Id.* at 3.) According to Defendant Hoveland, approximately six hours should cover the time necessary to file a simple interpleader action involving two defendants. (*Id.*) Finally, Defendant Hoveland asserted that it is clear that the insurance proceeds should have gone to her and that it was Mercury's insistence on endorsing the proceeds to Jones as well that created the necessity of an interpleader action. (*Id.* at 2.) Defendants Joneses did not respond to Mercury's Motion.

Mercury filed a Reply on March 31, 2014. Per Mercury, at the time of the fire, the Joneses were still in lawful ownership and possession of the property, and Hoveland, the mortgagee, had not yet initiated foreclosure proceedings on the property. (Doc. 20 at 4.) Since both parties possessed an insurable interest in the Property at the time of the

fire, Mercury states that it was obligated to protect those interests by making the settlement check jointly payable to both the named insureds and the mortgagee or potentially face double exposure to liability. (*Id.* at 5.) Therefore, according to Mercury, the interpleader action was necessary to determine the respective rights of the parties. (*Id.*) As for the reasonableness of the hours submitted, Mercury states that both the hourly rates are considered reasonable, as well as 27.55 hours expended. (*Id.* at 5-6.) Mercury also attached to its Reply a billing report that included detailed time entries. (Doc. 18-2.) The briefing on Mercury's Motion for Attorney's Fees has now concluded.

## DISCUSSION

"In an interpleader action, costs and attorneys' fees are generally awarded, in the discretion of the court, to the plaintiff who initiates the interpleader as a mere disinterested stakeholder." *Prudential Ins. Co. v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986) (additional citation omitted). The costs and fees are generally taxed against the interpleader fund. *Id.* An exception to this general rule arises, however, where the stakeholder's interpleader claim arises out of the normal course of business. *In re Mandalay Shores Co-op Housing Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994). The normal-course-of-business exception is typically applied to insurance companies. *Id.* (citing cases).

In *Prudential Property & Cas. Co. v. Baton Rouge Bank & Trust Co.*, 537 F. Supp. 1147, 1150-51 (D.C. Ga. 1982), the Court noted that the reasons for denying fees to an insurance company for an interpleader action were well-stated in *Minnesota Mutual Life Ins. Co. v. Gustafson*, 415 F. Supp. 615, 618-19 (W.D. Ill. 1976):

> [A]ttorneys' fees should not be granted to the stakeholder as a matter of course in interpleader actions concerning the proceeds of insurance policies. Although it is true that an interpleader action benefits both claimants and the courts by promoting expeditious resolution of the controversy in one forum, the chief beneficiary of an interpleader action is the insurance company. An inevitable and normal risk of the insurance business is the possibility of conflicting claims to the proceeds of a policy. An interpleader action relieves the company of this risk by eliminating the potential harassment and expense of a multiplicity of claims and suits. Furthermore, it discharges the company from all liability in regard to the

fund. It thus seems unreasonable to award an insurance company fees for bringing an action which is primarily in its own self-interest.

Later, in *Mandalay Shores*, the Eleventh Circuit further elucidated on the rule stated in *Baton Rouge Bank & Trust* and *Gustafson* by noting:

> The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds—disputes that arise with some modicum of regularity. In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award.

*Mandalay Shores*, 21 F.3d at 383.

In this case, Mercury has not sufficiently shown in its pleadings, nor is there anything in the record to reflect, why an insurance company like Mercury, one that insures homes, could not expect that a dispute over title and insurance proceeds would not "arise with some regularity in its course of business." *Life Investors Ins. Co. v. Childs*, 209 F. Supp. 2d 1255, 1256 (M.D. Ala. 2002) (denying fees because "[t]here is nothing in the record to indicate that Life Investors is anything other than an insurance company in a routine dispute over the proceeds of a life insurance policy"). Mercury observes that it encounters *some* disputes in the normal course of business but asserts that it was motivated to file this interpleader action to eliminate the risk of double exposure and to avoid dealing with conflicting claims and to protect the interests of both insureds. Yet the risk of double exposure and competing claims for insured property are precisely the kinds of situations that an insurance company will routinely encounter. There is nothing aberrant about the case at bar. Simply put, Mercury is in the business of providing insurance and should anticipate that an interpleader action will be part of the cost of doing business. Like other courts, this Court is not compelled by "the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as

a matter of course, transfer a part of their ordinary cost of doing business to (the claimant) by bringing an action for interpleader." *Campbell v. North Am. Co. for Life & Health Ins.*, No. 3:04-cv-1118, 2007 WL 2209249, at *7 (M.D. Fla. July 30, 2007) (citing *Gustafson*, 415 F. Supp. at 618). Accordingly, because the Court has not been presented with any reasons justifying ignoring the well-established and well-reasoned normal-course-of-business exception, Mercury Insurance Company of Georgia's Motion for Discharge and to Recover Attorney's Fees and Costs (Doc. 17) is **GRANTED** as to Mercury's request to be discharged from all liability under the policy at issue but **DENIED** as to Mercury's request for costs and fees.

      **SO ORDERED**, this  11th  day of June 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**